UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ODELVIN JACINTO MARTINEZ, as Administrator
of the Estate of FERDY ISAIAS JACINTO
MARTINEZ,

                           Plaintiff,

        -against-

COUNTY OF ROCKLAND, ROCKLAND COUNTY
SHERIFF'S OFFICE, RAYMOND NELSON, FELIX
CLEREAUX, JOHN AUGUSTONI, CLINT
HALSTEAD, WILLIAM CARR, DIRK MARTINEZ,
CONNOR McGUIGAN, ROBERT BARDIO,
MICHAEL SULLIVAN, and JOHN LEONARD,

                          Defendants.
-------------------------------------------------------------------X

Docket No.: 21-cv-1276

**COMPLAINT**

PLAINTIFF DEMANDS TRIAL
BY JURY

       Plaintiff ODELVIN JACINTO MARTINEZ, as Administrator of the Estate of FERDY

ISAIAS JACINTO MARTINEZ, by his attorneys, KELNER & KELNER, ESQS., and

SAMUEL L. ROSENBERG, P.C., as and for his Complaint in the above-referenced action,

hereby alleges as follows, upon information and belief:

**Preliminary Statement**

       1.    This action arises from the death of Ferdy Isaias Jacinto Martinez while in

custody of the County of Rockland and/or the County of Rockland Sheriff's Office at the

Rockland County Correctional Center. Despite posing no risk to anyone and suffering from

serious medical conditions, he was placed in a tiny isolation room and strapped into a restraint

chair for hours, while being forced to wear a spit shield over his face, as his blood pressure

progressively escalated and he became increasingly agitated. When he was finally removed from

the chair to be taken to a hospital on the order of a doctor, he was subjected to unwarranted and

excessive physical force by correctional personnel. He lost consciousness, and died. This

incident took place due to defendants' flagrant violations of his constitutional and civil rights, and acts of negligence. This suit seeks to hold them accountable.

## Jurisdiction and Venue

2.      This action arises from violations of decedent's civil and constitutional rights by defendants the COUNTY OF ROCKLAND, ROCKLAND COUNTY SHERIFF'S OFFICE, their agents, servants, and/or employees, including, but not limited to RAYMOND NELSON, FELIX CLEREAUX, JOHN AUGUSTONI, CLINT HALSTEAD, WILLIAM CARR, DIRK MARTINEZ, CONNOR McGUIGAN, ROBERT BARDIO, MICHAEL SULLIVAN, and JOHN LEONARD, and from these defendants' negligent acts and/or omissions.

3.      This Court has subject matter jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This action arises, *inter alia*, under 42 U.S.C. §1983 and §1988, and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

4.      This Court has supplemental jurisdiction over plaintiff's claims arising under state law, including, but not limited to, for general negligence, because they are so related to the federal claims that they form part of the same case and/or controversy.

5.      A substantial part of the events and/or omissions giving rise to the claims herein occurred in the County of Rockland, State of New York, and venue in the United States District Court for the Southern District of New York is therefore proper.

## Parties

6.      On or about July 25, 2019, decedent FERDY ISAIAS JACINTO MARTINEZ died, leaving distributees surviving.

7.      On December 22, 2020, ODELVIN JACINTO MARTINEZ was appointed as Administrator of the Estate of FERDY ISAIAS JACINTO MARTINEZ, by the Order of the

2

Honorable Keith Cornell of the Surrogate's Court, Rockland County, and is presently acting in said capacity.

8.      At all times herein mentioned, defendant COUNTY OF ROCKLAND was and remains a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

9.      At all times herein mentioned, defendant ROCKLAND COUNTY SHERIFF'S OFFICE was and remains an agency, subdivision, instrumentality of the COUNTY OF ROCKLAND, and/or otherwise a governmental entity and/or office.

10.      At all times herein mentioned, the Rockland County Correctional Center was and remains a correctional building, facility, and/or complex, located within the County of Rockland, State of New York (hereinafter "the Correctional Center").

11.      At all times herein mentioned, the Correctional Center was a county jail for the County of Rockland.

12.      At all times herein mentioned, defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE owned the Correctional Center.

13.      At all times herein mentioned, defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE operated the Correctional Center.

14.      At all times herein mentioned, defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE managed the Correctional Center.

15.      At all times herein mentioned, defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE maintained the Correctional Center.

16.      At all times herein mentioned, defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE controlled the Correctional Center.

17.     At all times herein mentioned, defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE administered the Correctional Center.

18.     At all times herein mentioned, the COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE had custody over the Correctional Center, pursuant to New York State Correction Law 500-c(1).

19.     At all times herein mentioned, defendant RAYMOND NELSON (hereinafter "NELSON") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

20.     At all times herein mentioned, defendant FELIX CLEREAUX (hereinafter "CLEREAUX") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

21.     At all times herein mentioned, defendant JOHN AUGUSTONI (hereinafter "AUGOSTONI") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

22.     At all times herein mentioned, defendant CLINT HALSTEAD (hereinafter "HALSTEAD") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

23.     At all times herein mentioned, defendant WILLIAM CARR (hereinafter "CARR") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

24.     At all times herein mentioned, defendant DIRK MARTINEZ (hereinafter "MARTINEZ") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

4

25.     At all times herein mentioned, defendant CONNOR McGUIGAN (hereinafter "McGUIGAN") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

26.     At all times herein mentioned, defendant ROBERT BARDIO (hereinafter "BARDIO") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

27.     At all times herein mentioned, defendant MICHAEL SULLIVAN (hereinafter "SULLIVAN") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

28.     At all times herein mentioned, defendant JOHN LEONARD (hereinafter "LEONARD") was employed by defendant COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and was assigned to the Correctional Center.

29.     At all times herein mentioned, AUGUSTONI, HALSTEAD, and CARR were Sergeants with defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and acted with supervisory authority as a consequence thereof.

30.     At all times herein mentioned, defendants NELSON, CLEREAUX, AUGUSTONI, HALSTEAD, CARR, MARTINEZ, McGUIGAN, BARDIO, SULLIVAN, and LEONARD (hereinafter referred to jointly as "the Officer Defendants") were acting within the course and scope of their employment with, and/or engagement by, defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE.

31.     At all times herein mentioned, the Officer Defendants were acting under color of law, on behalf of defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE, and with the power and authority vested in them as a consequence thereof.

**As and For a First Cause of Action for Negligence against defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE**

32.    On October 15, 2019, and October 18, 2019, plaintiff ODELVIN JACINTO MARTINEZ duly and timely served a Notice of Claim and Amended Notice of Claim, in writing, upon defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE.

33.    On January 11, 2021, and January 12, 2021, following his appointment as the Administrator of the Estate of FERDY ISAIAS JACINTO MARTINEZ, plaintiff ODELVIN JACINTO MARTINEZ duly and timely served a further Amended Notice of Claim in his capacity as Administrator, upon defendants ROCKLAND COUNTY SHERIFF'S OFFICE and COUNTY OF ROCKLAND, respectively.

34.    On February 3, 2020, plaintiff ODELVIN JACINTO MARTINEZ appeared for a hearing, pursuant to General Municipal Law §50-h.

35.    More than thirty days have elapsed since the service of said Notices of Claim upon defendants, and defendants, and/or their Comptroller(s) have failed, neglected and refused to pay, settle, compromise or adjust the claims of the plaintiff herein.

36.    On March 20, 2020, New York State Governor Andrew Cuomo issued Executive Order 202.8, entitled "Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency, " in the exercise of his authority under sections 29-a of Article 2-B of the Executive Law of the State of New York to "temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster." *See* Executive Order 202.8.

37.     In the exercise of such authority, Governor Cuomo directed that "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020."

38.     The aforesaid toll of the Statute of Limitations for negligence actions was extended by subsequent Executive Orders, including, but not limited to, 202.14, 202.28, 202.38, 202.48, 202.55.1, and 202.60.

39.     On October 5, 2020, Governor Cuomo issued Executive Order 202.67, which provided as follows:

> The suspension in Executive Order 202.8, as modified and extended in subsequent Executive Orders, that tolled any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby continued, as modified by prior executive orders, provided however, for any civil case, such suspension is only effective until November 3, 2020, and after such date any such time limit will no longer be tolled.

Executive Order 202.67.

40.     By reason of the foregoing Executive Orders, the statute of limitations for the commencement of negligence actions under New York State law was tolled from March 20, 2020, through November 3, 2020, inclusive of the end date.

41.    The instant action, accounting for the applicable tolls, has been brought within one year and ninety days from when the claims set forth herein accrued, and all causes of action set forth herein are timely.

42.    On and about July 21, 2019, decedent Ferdy Isaias Jacinto Martinez (hereinafter "decedent")was being detained at the Correctional Center.

43.    On and about July 21, 2019, decedent was being detained at the Correctional Center, and was within the care, custody, and control of defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE.

44.    At and/or about the time of his intake, defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE performed a medical screening on decedent, and were aware, among other things, that he had high blood pressure and other and further medical conditions and/or issues for which he required care and attention.

45.    On July 22, 2019, and July 23, 2019, decedent made multiple requests for medical attention, and/or otherwise manifested signs, symptoms, and/or behaviors demonstrating that he required medical care.  Such care was not provided to him.

46.    On July 23, 2019, at approximately 12:15 a.m., decedent again requested medical attention, and/or otherwise manifested signs, symptoms, and/or behaviors demonstrating that he required medical care.

47.    The Officer Defendants failed to obtain timely medical attention for decedent, despite his clear need for care.

48.    The Officer Defendants, following his request for medical attention, subjected decedent to substantial, unwarranted, and/or disproportionate physical force.

49.    The Officer Defendants, rather than obtaining medical attention for decedent, decided to place decedent in a restraint chair.

50.    A restraint chair is a chair with implements that are used to restrain a person in place, including all four of his limbs.

51.    Restraint chairs pose recognized, substantial risks of harm, including, but not limited to, because they immobilize a person and can subject them to physical and psychological stress.

52.    Prior to the time he was placed in the restraint chair, defendants knew that decedent had high blood pressure and had become verbally incoherent.

53.    A restraint chair posed a particularly significant risk of physical and psychological harm to decedent, given his medical conditions and presentation.

54.    The Officer Defendants decided to place decedent in a restraint chair, despite the fact that he posed no threat of harm to himself or others and that was unnecessary to do so for any valid correctional purpose.

55.    In doing so, they acted in contravention of applicable guidelines and accepted standards for when such restraint chairs could appropriately be used.

56.    The Officer Defendants knew and/or should have known that decedent's behavior was indicative of a medical condition requiring attention from a clinician.

57.    The Officer Defendants knew and/or should have known that decedent could not safely be placed in the restraint chair.

58.    The Officer Defendants also placed a spit shield on decedent, despite the fact that it was unnecessary, unwarranted, and otherwise contributed to his risk of harm.

59.    The Officer Defendants placed decedent in an isolated room and strapped him into the restraint chair.

60.    After decedent was placed in the restraint chair, his blood pressure, already elevated, significantly escalated and his condition deteriorated.

61.    Despite the fact that decedent spoke primarily or exclusively Spanish, defendants failed to provide him with continuous translation to allow him to communicate with them.

62.    During the multiple hours he was restrained, decedent continued to demonstrate incoherence and other signs and symptoms demonstrating that he could not safely be required to remain in the restraint chair and/or otherwise required emergent medical attention.

63.    Decedent did not require any such ongoing restraint.

64.    On July 23, 2019, at approximately 2:25 a.m., after decedent had been in the chair for multiple hours, the Officer Defendants told him they would release him.

65.    Despite briefly beginning to remove his straps, the Officer Defendants did not remove decedent from the restraint chair, and required him to remain in it.

66.    Defendants' decision to leave him the restraint chair was unjustified, unwarranted, and was made in contravention of applicable guidelines and accepted standards for when such restraint chairs could appropriately be used.

67.    Defendants knew and/or should have known that placing and/or leaving decedent in the restraint chair posed a substantial and unjustifiable risk of harm to his person.

68.    After being forced to remain in the restraint chair for hours, decedent's blood pressure and pulse continued to escalate, and he sweated profusely and displayed increased agitation and incoherence.

69.    Ultimately, at the directive of a physician, it was determined that, after the multiple hours he had been forced to be restrained, he required urgent hospitalization.

70.    Notwithstanding his extremely vulnerable physical state, the Officer Defendants removed him from the restraint chair with excessive, disproportionate, and unwarranted physical force and threw him onto a gurney.

71.    During and after throwing him onto a gurney, the Officer Defendants applied significant physical force to his body, including his neck.

72.    As a result of the foregoing, decedent suffered severe injuries, conscious pain and suffering, and fear of impending death, before he stopped moving and lost consciousness.

73.    As a result of the injuries suffered as a result of the foregoing, decedent died, on or about July 25, 2019.

74.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE, by and through their employees, including the Officer Defendants, had a duty to exercise reasonable care to protect decedent from harm, to avoid inflicting unnecessary harm upon him, and otherwise to act in accordance with good and accepted standards of medical and correctional practice.

75.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE, by and through their agents, servants, and/or employees, breached these applicable duties.

76.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE negligently failed to respond and/or properly respond to decedent's medical intake, symptoms, and behavior; made use of excessive and/or inappropriate force; made improper use of a restraint chair; failed to remove decedent from the restraint chair in accordance

with good and accepted standards of correctional and medical practice and applicable guidelines; made unwarranted use of physical maneuvers which posed a substantial and unjustifiable risk of harm; failed to provide sufficient training and instruction to their employees; failed to provide sufficient language translation capabilities at the facility, causing and/or contributing to communication difficulties between facility personnel and the decedent; in each and all of the respects set forth above; and otherwise were careless, reckless, and/or negligent in causing, allowing, permitting, and failing to prevent injuries to decedent.

77.    Decedent's injuries were proximately caused by the negligence of defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE, their agents, servants, and/or employees, including, but not limited to, the Officer Defendants.

78.    By reason of the foregoing, plaintiff has been damaged in the sum of TWENTY MILLION ($20,000,000.00) DOLLARS.

### As and For a Second Cause of Action for Wrongful Death/Negligence Against COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE

79.    Plaintiff repeats, reiterates, and realleges the allegations set forth in paragraphs 1 through 78 as though set forth more fully herein.

80.    As a result of the foregoing, decedent was caused to suffer wrongful death.

81.    Decedent's wrongful death was proximately caused by the carelessness, recklessness, and/or negligence of the COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE, their agents, servants, and/or employees, including, but not limited to, the Officer Defendants, in each and all of the respects set forth above.

82.    By reason of the foregoing and the wrongful death of the plaintiff's decedent,

plaintiff, ODELVIN JACINTO-MARTINEZ, on behalf of himself and any and all other distributees of the decedent, has been damaged in the sum of TWENTY MILLION ($20,000,000.00) DOLLARS.

**As and For a Third Cause of Action pursuant to 42 U.S.C. §1983 against defendants RAYMOND NELSON, FELIX CLEREAUX, JOHN AUGUSTONI, CLINT HALSTEAD, WILLIAM CARR, DIRK MARTINEZ, CONNOR McGUIGAN, ROBERT BARDIO, MICHAEL SULLIVAN, and JOHN LEONARD**

83.     Plaintiff repeats, reiterates, and realleges the allegations set forth in paragraphs 1 through 82 as though set forth more fully herein.

84.     The Officer Defendants, to wit, defendants NELSON, CLEREAUX, AUGUSTONI, HALSTEAD, CARR, MARTINEZ, McGUIGAN, BARDIO, SULLIVAN, and LEONARD, were acting under color of state law and were required to adhere to the United States Constitution, including, but not limited to, the Fifth, Eighth, and Fourteenth Amendments thereto.

85.     The Officer Defendants placed decedent in a restraint chair without good and sufficient cause, and for impermissibly punitive and arbitrary reasons.

86.     Decedent should not have been placed in the restraint chair in the first place.   He did not pose a threat to the safety of either officers or himself, and was controllable through safer and more limited means.

87.     His medical condition rendered him unfit for placement in the restraint chair, which was manifest to the Officer Defendants, including, but not limited to, based upon his elevated blood pressure, behavior, and verbal incoherence.

88.     The Officer Defendants then required decedent to remain in the restraint chair without good and sufficient cause, and for impermissibly punitive and arbitrary reasons, for a span of a number of hours.

13

89.     While he was in the restraint chair, his physical condition and mental distress continued to worsen, including in that his blood pressure escalated and he became increasingly incoherent.  It was and remained evident that restraining him in such a fashion posed a substantial and unjustifiable risk to his safety.

90.     Throughout his time in the restraint chair, his behavior continuously made clear that there was no need to restrictively detain him, that he was controllable by lesser means, and that leaving him in the chair only endangered him further.

91.     Decedent's behavior and symptomology while in the restraint chair, including his escalating blood pressure and incoherence, demonstrated that what he needed was a doctor – not restrictive detention.

92.     By placing decedent in the restraint chair and then refusing to remove him, even though he manifestly was not a threat to himself or others and his medical condition was worsening, the Officer Defendants acted with reckless disregard for, and deliberate indifference to, decedent's health and wellbeing.

93.     The Officer Defendants violated applicable guidelines and polices for the usage of restraint chairs.

94.     The Officer Defendants also made repeated use of excessive and unjustified force upon decedent.  Before placing him the restraint chair, they assaulted him, thereby endangering his safety.  They then subjected him to unnecessarily punitive and painful physical techniques while he remained in the chair.  And when a doctor required them to remove him so he could receive medical attention, after hours of having been unjustifiably restrained, they swarmed him, subjected him to substantial force, threw him onto a gurney, and placed pressure onto his neck, causing him severe injuries and hypoxia.

95.     The Officer Defendants failed to obtain for decedent the medical attention he urgently required.

96.     The Officer Defendants failed to respond and/or respond appropriately to decedent's medical condition and the substantial and unjustifiable risks they had themselves created to his health and safety.

97.     The Officer Defendants knew and/or reasonably should have known, that, in each and all of the foregoing respects, they were subjecting decedent to a substantial risk of serious bodily harm and/or death, and/or were reckless in doing so.

98.     The Officer Defendants were deliberately indifferent to decedent's physical and mental distress and medical needs.

99.     In each of the foregoing respects, the Officer Defendants violated decedent's clearly established right to be free from cruel and unusual punishments under the United States Constitution, and/or otherwise violated his right to due process of law.

100.    As a result of the foregoing, decedent was caused to sustain severe, serious, and permanent personal injuries, conscious pain and suffering, and fear of impending death.

101.    Defendants NELSON, CLEREAUX, AUGUSTONI, HALSTEAD, CARR, MARTINEZ, McGUIGAN, BARDIO, SULLIVAN, and LEONARD, under color of state law, subjected the decedent to the foregoing acts and omissions in violation of 42 U.S.C. §1983, thereby depriving him of rights, privileges, and immunities secured by the United States Constitution, including the Fifth, Eighth, and Fourteenth Amendments thereto.

102.    By reason of the foregoing, decedent's Estate has sustained damages in the amount of TWENTY MILLION DOLLARS ($20,000,000.00).

103.    Plaintiff further claims punitive damages against each and all of the Officer

Defendants herein, in amounts to be assessed by a jury.

104.    Plaintiff further claims attorney's fees, pursuant, inter alia, to 42 U.S.C. §1988.

**As and For a Fourth Cause of Action pursuant to 42 U.S.C. §1983 against defendants
RAYMOND NELSON, FELIX CLEREAUX, JOHN AUGUSTONI, CLINT HALSTEAD,
WILLIAM CARR, DIRK MARTINEZ, CONNOR McGUIGAN, ROBERT BARDIO,
MICHAEL SULLIVAN, and JOHN LEONARD**

105.    Plaintiff repeats, reiterates, and realleges the allegations set forth in paragraphs 1

through 104 as though set forth more fully herein.

106.    Defendants NELSON, CLEREAUX, AUGUSTONI, HALSTEAD, CARR,

MARTINEZ, McGUIGAN, BARDIO, SULLIVAN, and LEONARD under color of state law,

subjected the decedent to the foregoing acts and omissions in violation of 42 U.S.C. §1983,

thereby depriving him of rights, privileges, and immunities secured by the United States

Constitution, including the Fifth, Eighth, and Fourteenth Amendments thereto..

107.     As a result of the foregoing, decedent was caused to suffer wrongful death.

108.     By reason of the foregoing, plaintiff has sustained damages in the amount of

TWENTY MILLION DOLLARS ($20,000,000.00).

109.    Plaintiff further claims punitive damages against each and all of the named

defendants herein, in amounts to be assessed by a jury.

110.    Plaintiff further claims attorney's fees, pursuant, inter alia, to 42 U.S.C. §1988.

**As and For a Fifth Cause of Action pursuant to 42 U.S.C. §1983 against defendants
COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE**

111.    Plaintiff repeats, reiterates, and realleges the allegations set forth in paragraphs 1

through 110 as though set forth more fully herein.

112.     This incident was proximately caused by the COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE's deliberate indifference to the constitutional rights of detainees and/or inmates (jointly referred to, for present purposes, as inmates) in the Correctional Facility.

113.     The use of a restraint chair in a correctional setting poses substantial risks.  The use of restraints can cause severe physical and psychological harm to the inmate.  Moreover, many inmates who are placed in restraint chairs have already demonstrated a significant degree of mental distress, or other indicia of an underlying medical condition, and the use of restraints risks exacerbating those conditions and diverts focus from what may be an urgent and escalating need for medical care.  *See generally* Kenneth L. Applebaum, M.D., *Commentary: The Use of Restraint and Seclusion in Correctional Mental Health*, Journal of the American Academy of Psychiatry and the Law, vol. 35, No.4 p.431 (2007).

114.     The American Bar Association, on account of the substantial risks posed by the use of restraint chairs and the need for definitive and restrictive guidance to correctional personnel to avoid their misuse, has propounded a model minimum standard entitled "Standard 23-5.9; Use of restraint mechanisms and techniques."[1]

115.     The ABA standard, among other things, dictates that:

- Restraints should not be used "except to control a prisoner who presents an immediate risk of self-injury or injury to others, to prevent serious property damage, for health care purposes, or when necessary as a security precaution during transfer or transport."  (*see* Standard 23-5.9(a))

---

[1] Accessible at https://www.americanbar.org/groups/criminal_justice/publications/criminal_justice_section_archive/crimjust_standards_treatmentprisoners/ (last accessed February 10, 2021).

- "If restraints are used for medical or mental health care purposes, the restrained prisoner should, if possible, be placed in a health care area of the correctional facility, and the decision to use, continue, and discontinue restraints should be made by a qualified health care professional, in accordance with applicable licensing regulations"; (*see* Standard 23-5.9(e))

- "Four- or five-point restraints [i.e., restraint chairs] should be used only if a prisoner presents an immediate and extreme risk of serious self-injury or injury to others and only after less restrictive forms of restraint have been determined likely to be ineffective to control the prisoner's risky behavior. Whenever practicable, a qualified health care professional should participate in efforts to avoid using four- or five-point restraints"; (*see* Standard 23-5.9(f))

- "When restraints are necessary, correctional authorities should use the least restrictive forms of restraints that are appropriate and should use them only as long as the need exists." (*see* Standard 23-5.9(b))

116.    The ABA standard also requires that there be intensive ongoing medical supervision, including, but not limited to, medical evaluations every 15 minutes, and comprehensive assessments of the inmate's health and condition every two hours.  (*see* Standard 23-5.9(h))

117.    The standard promulgated by defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE for the Correctional Facility at the time of the subject occurrence was, by marked contrast, highly permissive.  While nominally stating a general policy that the "purpose" of the chair is for use "when all other methods of restraint have failed," it contained no actual such requirement.  It did not contain any criteria for the

determination of when an inmate may permissibly be placed in the chair, and limited, if any guidance, for when he must be removed. The policy largely left these highly significant decisions to the unfettered discretion of untrained correctional personnel.

118.    The policy also provided for limited and insufficient medical involvement and supervision.

119.    Defendants' policy did not restrict the use of the chair in any meaningful way or even require the removal of an inmate as soon as practicable.

120.    In addition to their permissive policy concerning the usage of the restraint chair, defendants provided their employees, including, but not limited to, the Officer Defendants with no and/or effectively no training concerning its usage and/or the necessary and appropriate limits thereof.

121.    The need for specialized training of corrections officers in procedures for the administration of the restraint chair and techniques for avoiding its usage, particularly for inmates with mental health symptomology, was obvious.

122.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE knew, to a moral certainty, that officers supervising inmates would be required to confront situations where they would need to determine whether an inmate could or should be placed in a restraint chair, and thereafter, when he should or could be removed.

123.    It was equally obvious that the failure to provide such training and/or to institute appropriate procedures would inevitably result in the improper and unsafe use of the chair and attendant dangers to the health and safety of inmates, as officers lacking the requisite knowledge and training are ill-equipped to render such determinations.

124.    In the absence of such training, violations of inmates' rights were overwhelmingly likely to occur, and in fact, did so here.  Decedent was placed in the restraint chair despite already having been suffering from a significant medical condition, and even though it was entirely unnecessary to place him in the chair to begin with; still required him to go into the chair after he walked compliantly with them to the room where they intended to restrain him; left him in the chair for hours as his blood pressure escalated, his speech became incoherent, and he sweated profusely; and then failed to carry through with removing him long after it was obvious there was no need or value whatsoever to continue to restrain him and that his health was in jeopardy.

125.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE were deliberately indifferent to the need for such training and/or monitoring, and to the constitutional rights such training and monitoring were necessary to protect.

126.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE also failed to implement appropriate guidelines and training concerning the use of force in the Correctional Center.

127.    The ABA standard directed that jails "adopt a range of force options and explicitly prohibit the use of premature, unnecessary or excessive force" and "control techniques should be intended to minimize injuries to both prisoners and staff."  (ABA Standard 23-5.6(d)). It further directs that "[e]xcept in highly unusual circumstances in which a prisoner poses an imminent threat of serious bodily harm, staff should not use types of fore that carry a high risk of injury."  (ABA Standard 23-5.6(d)).

128.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE's Use of Force directive, like their restraint policy, was vague and permissive, in marked contrast to the ABA standard.

129.    Defendants' deficient policy was also accompanied by no and/or effectively no meaningful training concerning the proportionate and measured use of force in the correctional context and/or training particularized to inmates with mental health conditions and/or delirium.

130.    The need for such training was obvious.

131.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE knew, to a moral certainty, that officers supervising inmates would be required to confront situations where they would need to determine whether and how to engage in the use of force.

132.    It was equally obvious that the failure to provide such training and/or to institute appropriate procedures would inevitably result in the improper and unsafe use of force, as officers lacking the requisite knowledge and training are ill-equipped to render such determinations, particularly as to proportionality.

133.    In the absence of such training, violations of inmates' rights were overwhelmingly likely to occur.  Here, decedent was subjected to significant force by a number of officers without warrant while in his cell block; then later, again, when he was being removed from the chair, was swarmed by seven officers, all of whom were applying significant force to his person while he was largely defenseless; made use of painful maneuvers even while he was *in* the restraint chair; and applied unnecessary force to his neck shortly before he lost consciousness. These events attest to, and were proximately caused by, defendants' grave lack of training and guidance to its officers.

134.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE were deliberately indifferent to the need for such training and/or monitoring, and to the constitutional rights such training and monitoring were necessary to protect.

135.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE's deliberate indifference to the health and safety of inmates in the Correctional Facility, and their rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, proximately caused the subject occurrence and decedent's injuries and death.

136.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE, under color of state law, subjected the decedent to the foregoing acts and omissions in violation of 42 U.S.C. §1983, thereby depriving him of rights, privileges, and immunities guaranteed to him by the United States Constitution.

137.    By reason of the foregoing, decedent's Estate has sustained damages in the amount of TWENTY MILLION DOLLARS ($20,000,000.00).

138.    Plaintiff further claims attorney's fees, pursuant, inter alia, to 42 U.S.C. §1988.

**As and For a Sixth Cause of Action pursuant to 42 U.S.C. §1983 against defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE**

139.    Plaintiff repeats, reiterates, and realleges the allegations set forth in paragraphs 1 through 138 as though set forth more fully herein.

140.    Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE, under color of state law, subjected the decedent to the foregoing acts and omissions in violation of 42 U.S.C. §1983, thereby depriving him of rights, privileges, and immunities guaranteed to him by the United States Constitution.

141.    As a result of the foregoing, decedent was caused to suffer wrongful death.

142.    By reason of the foregoing, plaintiff has sustained damages in the amount of TWENTY MILLION DOLLARS ($20,000,000.00).

143.    Plaintiff further claims attorney's fees, pursuant, inter alia, to 42 U.S.C. §1988.

**As and For a Seventh Cause of Action for Negligent Hiring and Retention against defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE**

144.    Plaintiff repeats, reiterates, and realleges the allegations set forth in paragraphs 1 through 143 as though set forth more fully herein.

145.    Defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE were negligent in hiring and/or continuing to retain defendants NELSON, CLEREAUX, AUGUSTONI, HALSTEAD, CARR, MARTINEZ, McGUIGAN, BARDIO, SULLIVAN, and/or LEONARD, including, but not limited to, based upon their qualifications, performance evaluations, and prior conduct and/or disciplinary history.

146.    Defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE knew and/or should have known that defendants NELSON, CLEREAUX, AUGUSTONI, HALSTEAD, CARR, MARTINEZ, McGUIGAN, BARDIO, SULLIVAN, and/or LEONARD were not safely entrusted with responsibilities at the Correctional Center, prior to the time of the subject occurrence herein.

147.    Defendants COUNTY OF ROCKLAND and/or ROCKLAND COUNTY SHERIFF'S OFFICE's negligent hiring and/or retention of defendants NELSON, CLEREAUX, AUGUSTONI, HALSTEAD, CARR, MARTINEZ, McGUIGAN, BARDIO, SULLIVAN, and/or LEONARD was a proximate cause of injuries to decedent.

148.     By reason of the foregoing, decedent's Estate has sustained damages in the amount of TWENTY MILLION DOLLARS ($20,000,000.00).

**As and For an Eighth Cause of Action for Negligent Hiring and Retention /Wrongful Death against defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE**

149.     Plaintiff repeats, reiterates, and realleges the allegations set forth in paragraphs 1 through 148 as though set forth more fully herein.

150.     Defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE were negligent in the hiring and/or retention of defendants NELSON, CLEREAUX, AUGUSTONI, HALSTEAD, CARR, MARTINEZ, McGUIGAN, BARDIO, SULLIVAN, and/or LEONARD.

151.     As a result of the foregoing, decedent was caused to suffer wrongful death.

152.     By reason of the foregoing, plaintiff has sustained damages in the amount of TWENTY MILLION DOLLARS ($20,000,000.00).

**Conclusion**

WHEREFORE, plaintiff demands judgment against defendants COUNTY OF ROCKLAND and ROCKLAND COUNTY SHERIFF'S OFFICE in the sum of TWENTY MILLION DOLLARS ($20,000,000); against defendants RAYMOND NELSON, FELIX CLEREAUX, JOHN AUGUSTONI, CLINT HALSTEAD, WILLIAM CARR, DIRK MARTINEZ, CONNOR McGUIGAN, ROBERT BARDIO, MICHAEL SULLIVAN, and JOHN LEONARD, in the sum of TWENTY MILLION DOLLARS ($20,000,000); punitive damages against defendants RAYMOND NELSON, FELIX CLEREAUX, JOHN AUGUSTONI, CLINT HALSTEAD, WILLIAM CARR, DIRK MARTINEZ, CONNOR McGUIGAN, ROBERT BARDIO, MICHAEL SULLIVAN, and JOHN LEONARD; attorney's

fees, pursuant to 42 U.S.C. §1988; the costs and disbursements herein; and such other and further

relief as the Court may deem just and proper under the circumstances.

Dated:  New York, New York
          February 12, 2021

                                    Yours, etc.,

                                    KELNER & KELNER, ESQS.

                                    By:_____
                                         Joshua D. Kelner (JK-3303)
                                    7 World Trade Center
                                    250 Greenwich Street, Suite 2700
                                    New York, New York 10007
                                    (212) 425-0700

                                           - and-

                                    SAMUEL L. ROSENBERG, P.C.*
                                    15 Astor Place
                                    Wesley Hills, New York 10952
                                    * Member of New York State Bar
                                      SDNY Admission Pending